UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DERRICK PRIDE,

                              Plaintiff,

v.                                                          5:09-CV-0861
                                                            (GTS/ATB)
SUMMIT APARTMENTS,

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

DERRICK PRIDE
   Plaintiff, *Pro Se*
245 Evaleen Avenue
Syracuse, NY 13207

OFFICE OF HUGH GREGG, II                      HUGH GREGG, II, ESQ.
   Counsel for Defendant
120 East Washington Street
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

        Currently before the Court, in this *pro se* civil rights action filed by Derrick Pride

("Plaintiff") against Summit Apartments ("Defendant"), are Defendant's motion for summary

judgment and Plaintiff's cross-motion for summary judgment.  (Dkt. Nos. 28, 30.)  For the

reasons set forth below, Defendant's motion is granted in part and denied in part without

prejudice, and Plaintiff's cross-motion is denied without prejudice.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that in late June of 2008,

while he was employed by Defendant, in Syracuse, New York, Defendant violated Plaintiff's

following rights in the following manner: (1) his rights under the Fourteenth Amendment and 42

U.S.C. § 1983 by discriminating against him because of his race under color of state law, and (2)

his rights under Title VII of the Civil Rights Act of 1964, as amended, by terminating his

employment based on his race.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Familiarity with the

factual allegations supporting these claims in Plaintiff's Complaint is assumed in this

Memorandum-Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

### B.      Undisputed Material Facts

The following material facts have been asserted and supported by Defendant in its Local

Rule 7.1 Statement, and not denied by Plaintiff in a Local Rule 7.1 Response.  (*Compare* Dkt.

No. 28, Attach. 4 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 30 [Plf.'s Opp'n Papers, omitting a

Rule 7.1 Response].)  Plaintiff received specific notice of the consequences of failing to file a

Local Rule 7.1 Response.  (Dkt. No. 28, Attach.1.) As a result, the facts asserted by Defendant

have effectively been admitted by Plaintiff pursuant to Local Rule 7.1(a)(e).[1]

Defendant is a privately owned limited liability company organized under the laws of

Indiana and authorized to do business in New York.  Since 2006, Defendant has provided

---

[1]      The Court notes that, while it declines to *sua sponte* scour the record in search of
evidence of a genuine dispute of material fact, it has not turned a blind eye to any such evidence
that it unearthed during the review of the record that it conducted in order to determine if
Defendant met its modest threshold burden on its motion.

low-income housing in the Syracuse, New York, area. Defendant is not a public or quasi-public entity.  Defendant is privately owned and operated.  Defendant provides "section 8" housing through a program administered by the United States Department of Housing & Urban Development ("HUD"). In that respect, a portion of the rents received by Summit are paid pursuant to a contract with HUD.

The decisions respecting the hiring and/or firing of Defendant's employees are made by the respective supervisory agents of Defendant and are not subject to the input, influence or review of any federal, state or local government entity.  Defendant sets its own standards for the hiring and/or firing of employees.  In 2007, Defendant's highest number of employees in New York State, whether full time or part time, was fourteen (14).[2]  In 2008, Defendant's highest number of employees in New York State, whether full time or part time, was nine (9).[3]

Plaintiff was employed by Defendant in 2007 and 2008 as a custodian. As a custodian he was responsible for the cleaning of five buildings rented by Defendant's tenants.  Plaintiff was

---

[2]    While Defendant asserts in its Local Rule 7.1 Statement that this was its highest number of employees nationwide in 2007, Defendant supports that assertion with citations to documents evidencing such employment only in New York State.  (Dkt. No. 28, Attach. 2, at ¶ 6; Dkt. No. 28, Attach. 3, at 2-4 [attaching Ex. A to Bates Affid.].)  Furthermore, despite the assertion to the contrary contained in Thomas Strait's reply affidavit, at least some record evidence exists from which a rational fact finder could conclude that, during the time in question, Defendant also had one or more "employees" in Indiana, for purposes of 42 U.S.C. § 2000e(b).  *See, infra,* Part III.B. of this Decision and Order.

[3]    Again, while Defendant asserts in its Local Rule 7.1 Statement that this was its highest number of employees nationwide in 2008, Defendant supports that assertion with citations to documents evidencing such employment only in New York State.  (Dkt. No. 28, Attach. 3, at ¶ 6; Dkt. No. 28, Attach. 3, at 5-8 [attaching Ex. A to Bates Affid.].)  Furthermore, despite the assertion to the contrary contained in Thomas Strait's reply affidavit, at least some record evidence exists from which a rational fact finder could conclude that, during the time in question, Defendant also had one or more "employees" in Indiana, for purposes of 42 U.S.C. § 2000e(b).  *See, infra,* Part III.B. of this Decision and Order.

terminated from his employment on or around June 27, 2008.  According to correspondence from Defendant to Plaintiff at the time, Defendant's decision to terminate Plaintiff was based upon Plaintiff's inability to perform his job duties in a satisfactory fashion.[4]

On or around August 25, 2008, Plaintiff filed a complaint against Defendant with the New York State Division of Human Rights. Plaintiff's complaint alleged that his termination was motivated by racial discrimination. After duly investigating, the Division of Human Rights found the allegations in Plaintiff's complaint to be unsupported by the relevant facts.  On or around April 30, 2009, the United States Equal Employment Opportunity Commission adopted the findings of the New York State Division of Human Rights.

On July 30, 2009, Plaintiff commenced the instant action by filing a complaint (the "Complaint").  The Complaint seeks relief pursuant to both 42 U.S.C. § 1983 and 42 U.S.C. § 2000e *et seq.*  Defendant's answer to the Complaint (the "Answer") was timely filed on September 17, 2010. The Answer raises certain affirmative defenses, including that Defendant was not acting "under color of state law" pursuant to 42 U.S.C. § 1983, and that Defendant is not an "employer" as defined by 42 U.S.C. § 2000e(b).  In addition, the Answer states that Plaintiff was terminated from his employment for legitimate, non-discriminatory reasons.

---

[4]     While Defendant asserts in its Local Rule 7.1 Statement that its decision to terminate Plaintiff was based upon Plaintiff's inability to perform his job duties in a satisfactory fashion, Defendant supports that factual assertion with only citations to an affidavit of a woman (i.e., Elisa Bates) who does not demonstrate that she possesses personal knowledge of the fact asserted.  (Dkt. No. 28, Attach. 2, at ¶¶ 12, 15; Dkt. No. 28, Attach. 3, at 2-4 [attaching Ex. A to Affid. of Elisa Bates]; Dkt. No. 28, Attach. 3, at 12 [attaching Ex. C to Affid. of *Elisa* Bates, containing correspondence from *Adriana* Bates].)  Moreover, at least some record evidence exists from which a rational fact finder could conclude that the decision was not based upon Plaintiff's inability to perform such work.  *See, infra,* Part III.C. of this Decision and Order.

4

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts is assumed in this Decision and Order, which (again) is intended

primarily for review by the parties.  (*Id*.)

### C.      Defendants' Motion and Plaintiff's Cross-Motion

Generally, in support of its motion for summary judgment, Defendant argues as follows:

(1) Plaintiff's claim under 42 U.S.C. § 1983 fails because he has failed to show any state action;

(2) Plaintiff's Title VII claim fails because Defendant never had more than 14 employees during

the statutorily applicable time period and is thus not a covered employer pursuant to 42 U.S.C. §

2000e(b); and (3) both of Plaintiff's claims must fail because he cannot meet his initial burden

under either of the burden-shifting frameworks applied to Title VII cases. (*See generally* Dkt.

No. 28, Attach. 5 [Defs.' Memo. of Law].)

Generally, in Plaintiff's response to Defendant's motion for summary judgment, he

argues as follows: (1) Plaintiff asserts that Defendant acted under color of law; (2) Defendant

provided documentation for its employees in only New York State and not for any of its

employees in Indiana, which may bring the total number of employees above the threshold

required under 42 U.S.C. § 2003e(b); and (3) Plaintiff has produced sufficient evidence to meet

his initial burden or to at least create a genuine dispute as to any material fact of his *prima facie*

case for racial discrimination.  (*See generally* Dkt. No. 30 [Plf.'s Opp'n Memo. of Law].)

Plaintiff also cross-moves for summary judgment on each of his claims.  (*Id*.)

Generally in its reply, Defendant argues as follows: (1) because Plaintiff failed to include

a statement of material facts in his response, the facts provided in Defendant's Local Rule 7.1

Statement should be deemed to be admitted; (2) Plaintiff's response fails to raise a dispute as to

any material fact on the question of state action, which supports dismissal of Plaintiff's claim under 42 U.S.C. § 1983; (3) because Defendant has no employees in Indiana, just in New York, Defendant is not a covered employee pursuant to 42 U.S.C. § 2000e(b); and (4) Plaintiff's allegations in his response do not meet his initial burden to prove a *prima facie* case of racial discrimination or show a genuine dispute as to a material fact.  (*See generally* Dkt. No. 31 [Def.'s Reply].)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.   Legal Standards Governing Plaintiff's Claims

Plaintiff's first claim arises under a federal civil rights law that provides a remedy for individuals who have been deprived of their federal statutory or constitutional rights under color of state law. More specifically, 42 U.S.C. § 1983, the statute upon which Plaintiff relies for his first claim, provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, [or] regulation . . . of any State . . . , subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

6

42 U.S.C. § 1983.  Generally, to establish a claim under § 1983, a plaintiff must establish, by a preponderance of the evidence, each of the following three things: (1) the defendant was acting under color of state law; (2) the defendant's conduct deprived the plaintiff of a federal right, that is, a right secured by the Constitution or federal statute; and (3) the defendant's conduct caused an injury to the plaintiff.  *See O'Neil v.  Bebee*, 5:09-CV-1133, 2010 WL 502948, at *5 (N.D.N.Y. Feb.  10, 2010) (Suddaby, J.) (citing *Dwares v. City of New York*, 985 F.2d 94, 98 [2d Cir.  1993]).

Plaintiff's second claim arises under a federal civil rights law that provides a remedy for individuals whose employers have discriminated against them on the basis of race, color, religion, sex, or national origin.  Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e *et seq*., states, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a).  In a line of cases starting with *McDonnell Douglas Corp. v. Green*, the Supreme Court has established a burden-shifting framework for Title VII claims.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-3 (1973).  Under this framework, a plaintiff in a discriminatory treatment case must first demonstrate a *prima facie* case of discrimination by showing (1) the plaintiff is within a protected group, (2) the plaintiff is qualified for the position, (3) the plaintiff was discharged, and (4) the discharge occurred under circumstances giving rise to the inference of discrimination. *Windham v. Time Warner*, 275 F.3d 179, 187 (2d Cir. 2001).  This burden on the plaintiff is "minimal."  *Windham*, 275 F.3d at 187.  The initial burden then shifts to the defendant to show a non-discriminatory reason for the discharge.  *Id*.  Once a defendant meets that requirement, the

7

burden then returns to the plaintiff, who must prove by a preponderance of the evidence that the defendant's offered reason for the discharge was only a pretext for discrimination.  *Id*.

Alternatively, if a plaintiff claims that a defendant took an adverse employment action for multiple reasons that include unlawful discrimination (thus presenting a so-called  "mixed motives" case), then a different test is used.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 173 (2d Cir. 2006).  Under the mixed-motives test, a plaintiff must first prove that a prohibited discriminatory factor played a motivating part in the adverse employment decision.  *Id*.  In order to shift the burden to the defendant, the plaintiff must produce a "smoking gun" or at least a "thick cloud of smoke" supporting the allegations of discrimination.  *Id*.  Once the burden has shifted, the defendant must then prove by a preponderance of the evidence that it would have made the same decision even without the discriminatory purpose.  *Id*.

III.   **ANALYSIS**

**A.   Whether Plaintiff's Claim Under 42 U.S.C. § 1983 Should Be Dismissed Because of a Lack of State Action**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 28, Attach. 5, at 6-9 [Def.'s Memo. of Law]; Dkt. No. 31, at ¶¶ 9-12 [Def.'s Reply Memo. of Law].)  The Court would only add the following analysis.

It is well accepted that, on a defendant's motion for summary judgment, the plaintiff's claim may be dismissed for failure to state a claim.  *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."); *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule

56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that pleading standard under Fed. R. Civ. P. 8(a) turns on the *plausibility* of an actionable claim, rather than turn on the *conceivability* of an actionable claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007). As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[5] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[6] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson v. Onondaga Cnty.*, 549 F.

---

[5]    *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

[6]    *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

Supp.2d 204, 214, n.28 [citations omitted] (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Here, Plaintiff has failed to allege, in any of his filings, facts plausibly suggesting that Defendant is a state actor or that Defendant acted under color of any statute, ordinance, or regulation when it terminated his employment.  For example, Plaintiff's Complaint does not plead any state action other than the general statement that Plaintiff brought the claim pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1, at ¶ 1.)  In opposing Defendant's argument that it is not a state actor, Plaintiff's response contains only the conclusory statement that the "adverse action was against Plaintiff while acting under color [of state] law."  (Dkt. No. 30, at 2 [Plf.'s Opp'n Memo. of Law].)  Neither Plaintiff's Complaint nor his response alleges facts plausibly suggesting that Defendant is a state actor or that Defendant acted under color of state law.  As a result, an analysis of the material within the four corners of Plaintiff's Complaint compels the conclusion that the Complaint fails to state a claim upon which relief can be granted as to his claim pursuant to 42 U.S.C. § 1983.

Because this pleading deficiency appears to be substantive rather than merely formal, the Court finds that leave to amend the Complaint is not required before dismissal.  In any event, even if the Court were not to dismiss Plaintiff's § 1983 claim based on this pleading deficiency pursuant to Fed. R. Civ. P. 12(b)(6), it would dismiss the claim based on an evidentiary deficiency pursuant to Fed. R. Civ. P. 56.

For all of these reasons, this aspect of Defendant's motion for summary judgment is granted; Plaintiff's claim pursuant to  42 U.S.C. § 1983 is dismissed; and Plaintiff's cross-motion for summary judgment on this claim is denied as moot or, in the alternative, as unsupported by a showing of cause.

10

**B.    Whether Plaintiff's Title VII Claim Should Be Dismissed Because Defendant Is Not a Covered Employer Pursuant to 42 U.S.C. § 2000e(b)**

After carefully considering the matter, the Court must answer this question in the negative.   Section 2000e(b) provides, in relevant part, as follows:  "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any such agent of such a person . . . ."  42 U.S.C. § 2000e(b).  The Court acknowledges that, in support of its assertion that it did not have more than 14 employees in either 2007 or 2008, Defendant has adduced the following evidence: (1) Paragraphs 6 and 7 of the affidavit of its current property manager, Elisa Bates, stating that "[i]n 2007, [Defendant] never employed greater than fourteen (14) employees," and "[i]n 2008, [Plaintiff's] highest number of employees was nine (9)"; (2) Exhibit A to the affidavit of Elisa Bates, containing copies of Defendant's relevant New York State "Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Returns" which indicate the number of persons employed by Defendant in New York State in 2007 and 2008; and (3) Paragraphs 3 and 4 of the affidavit of Thomas Strait, stating, inter alia, that "[Defendant] does not have any employees in the state of Indiana," because "[Defendant's] business is limited solely to the ownership and management of apartment buildings in New York."  (Dkt. No. 28, Attach. 3, at ¶ 6; Dkt. No. 28, Attach. 3 [attaching Ex. A to Bates Affid.]; Dkt. No. 31, Attach. 1, at ¶¶ 3-4 [Strait Affid.].)

However, at least some record evidence exists from which a rational fact finder could conclude that, during the time in question, Defendant also had one or more "employees" in

11

Indiana, for purposes of 42 U.S.C. § 2000e(b).[7]  For example, the record contains the following

evidence: (1) evidence that Thomas Strait was performing supervisory job functions for

Defendant as its vice-president in at least May and June of 2008 while living and working in

Allen County, Indiana;[8] and (2) evidence that Linda Niccum performed bookkeeping work for

Defendant, while she lived in Indiana, during the time in question.[9]  The Court notes that the

docket sheet contains an affidavit stating that it was not until January 2009 that Ms. Niccum

started working as an administrative assistant for the related company that shares office space

with Defendant in Indiana (leaving open the possibility that she was employed by Defendant

before that time).[10]  The Court notes that the absence of any documents (e.g., any corporate

agreements, Indiana insurance or tax documents, or federal tax documents) supporting the

conclusion that neither Mr. Strait nor Ms. Niccum was, during the time in question, an employee

---

[7]      The Court notes that Mr. Strait and Ms. Niccum  may be considered Summit
Apartments employees for the purposes of 42 U.S.C. § 2000e(b) even if they are not on the
company payroll.  Courts have adopted at least two doctrines that permit employees of closely
related companies to be counted together in civil rights cases.  *See, e.g., Papa v.  Katy Indus.,
Inc.*, 166 F.3d 937, 940-41 (7th Cir. 1999) (Posner, J.) (finding three situations that permit
the aggregation of employees from related corporations in civil rights cases); *Arculeo v.  On-Site
Sales & Mktg., LLC*, 425 F.3d 193, 197-99 (2d Cir. 2005) (discussing the "single employer" and
"joint employer" doctrines in Title VII cases); *Lima v.  Addeco*, 634 F.Supp.2d 394, 399-400
(S.D.N.Y. 2009) (holding that the single employer and joint employer doctrines apply in Title
VII cases); *Westphal v. Catch Ball Prod. Corp.*, 953 F.Supp. 475, 478 (W.D.N.Y. 1997) (holding
that the single employer doctrine applies in Title VII cases).

[8]      (Dkt. No. 30, Attach. 3, at 2-3 [Ex. C to Plf.'s Opp'n Memo. of Law]; Dkt. No.
31, Attach. 1, at ¶¶ 1 & Verification [Reply Affid. of Strait].)

[9]      (Dkt. No. 28, Attach. 3 [attaching Ex. A to Bates Affid., listing Linda Niccum as
Defendant's "Bookkeeper" as of July 10, 2007, October 7, 2007, January 13, 2008, April 15,
2008, February 5, 2008, October 17, 2008, and January 10, 2009, with a telephone number
containing an Indiana area code]; Dkt. No. 31, Attach. 1, at 3 [Reply Affid. of Strait, showing
Linda Niccum as the notary public who notarized Thomas Strait's affidavit in Allen County,
Indiana, on June 2, 2011].)

[10]     (Dkt. No. 12, Attach. 3, at ¶ 1 [Niccum Affid.].)

of Defendant is conspicuous, given the Court's note in its Decision and Order of June 16, 2010, that Defendant shares the same address as a related company in Fort Wayne, Indiana.  (Dkt. No. 15, at 3, n.2.)

For all of these reasons, Plaintiff's claim under Title VII survives this aspect of Defendant's motion.  However, because the Court finds that the above-described defects in Defendant's motion papers may be rectified through better briefing (thus eliminating the need for a time-consuming and costly trial), the Court denies this aspect of Defendant's motion only without prejudice.

**C.    Whether Plaintiff's Title VII Claim Should Be Dismissed Because Plaintiff Has Not Met His Initial Burden Under Either Burden-Shifting Framework**

After carefully considering the matter, the Court answers this question in the negative.

**1.    Analysis Under Standard Governing Pretext Cases**

As stated above in Part II.B. of this Memorandum-Decision and Order, Plaintiff can make out a *prima facie* case of discrimination under the *McDonnell Douglas* test (which governs pretext cases) by showing that (1) he is within a protected group, (2) he was qualified for the position, (3) Defendant discharged him, and (4) the discharge occurred under circumstances giving rise to the inference of discrimination.  *Windham*, 275 F.3d at 187.  Defendant does not dispute the existence of the first and third elements (i.e., whether Plaintiff is a member of a protected class, and whether Defendant discharged Plaintiff).  Rather, Defendant disputes the existence of the second and fourth elements (i.e., whether Plaintiff was qualified for the position, and whether the discharge occurred under circumstances giving rise to the inference of discrimination).

Regarding the second element (i.e., whether Plaintiff was qualified for the position), Defendant cites a case from the Seventh Circuit for the point of law that, in order to be qualified for a position, an employee must meet the employer's legitimate expectations.  (Dkt. No. 28, Attach. 5, at 11 [Def.'s Memo. of Law, citing *Brummett v. Lee Enter., Inc.*, 284 F.3d 742, 744 (7th Cir. 2002)]).  Relying on this point of law, Defendant argues that, because Plaintiff did not meet Defendant's legitimate expectations, there is no genuine dispute that he was unqualified for the position.  (Dkt. No. 28, Attach. 5, at 11 [Def.'s Memo. of Law].)

As an initial matter, the Court notes that the Second Circuit has adopted its own point of law for the qualifications prong that is substantially similar to the one adopted by the Seventh Circuit.  The Second Circuit has held that *McDonnell Douglas* requires only a *minimal showing* that a plaintiff possesses the basic skills necessary for performance of the job.  *Owens v. N.Y.C. Hous. Auth.*, 924 F.2d 405, 406 (2d Cir. 1991) (emphasis added).  However, the Second Circuit has clarified that "a plaintiff must [still] satisfy the employer's honestly-held expectations." *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 30 (2d Cir. 1997).  Under that standard, the record contains sufficient evidence to make out a prima facie case that Plaintiff was qualified for the position.  For example, the record contains the following evidence: (1) evidence that, during the initial "several months" of Plaintiff's year-long employment with Defendant, "management at [Plaintiff] was generally satisfied with his work;"[11] (2) evidence that, prior to his discharge, he never received written notice of an employment violation;[12] and (3) evidence that, even after

---

[11]     (Dkt. No. 28, Attach. 2, at ¶¶ 7-8 [Bates Affid.].)

[12]     (Dkt. No. 1, at ¶ 5 [Plf.'s Verified Compl., swearing that "[d]uring my employment at Summit Apartments, I never received or signed a[n] employment violation"]; *cf.* Dkt. No. 30, Attach. 3, at 2 [attaching Ex. C to Plf.'s Memo. of Law, containing letter from Thomas Strait stating that Adriana Bates told him in May 2007 that she had given Plaintiff only

deciding to discharge Plaintiff, Defendant's property manager thanked him for his "hard work," commended him for his "admirable" "work ethic," and recommended him for employment at other companies due to his "excellent work record" and willingness to go "above and beyond his normal job duties."[13]

Regarding the fourth element (i.e., whether the discharge occurred under circumstances giving rise to the inference of discrimination), the record contains sufficient evidence to make out a prima facie case that this element exists.  For example, in addition to containing the above-described evidence (regarding Plaintiff's lack of receipt of written notices of employment violations before his termination, and his receipt of a commendation and a recommendation upon his termination), the record contains evidence that, at least initially after his termination, Plaintiff was replaced by a white employee.[14]

Because sufficient record evidence exists to make out a prima facie case of discrimination, the burden shifts to Defendant to show a non-discriminatory reason for the discharge. While Defendant has adduced some evidence that there was a non-discriminatory reason for the discharge, Defendant has not adduced evidence of a sufficient quantity and quality to remove any genuine issue of material fact regarding whether there was a non-discriminatory reason for the discharge.

---

oral warnings before initially terminating him in May 2007].)

[13]    (Dkt. No. 30, Attach. 5 [attaching Ex. E to Plf.'s Opp'n Memo. of Law]; Dkt. No. 30, Attach. 6 [attaching Ex. F to Plf.'s Opp'n Memo. of Law].)

[14]    (Dkt. No. 1, at ¶ 9 [Plf.'s Verified Compl., swearing that, when he stopped by the corporate office upon receiving a lay-off letter, he learned that he was being replaced by a white employee]; Dkt. No. 30, Attach. 3, at 2 [attaching Ex. C to Plf.'s Memo. of Law, containing letter from Thomas Strait stating that, after Plaintiff was terminated, his janitorial duties were assumed by a white maintenance repair employee who had been hired prior to Plaintiff's termination]; Dkt. No. 31, Attach. 1, at ¶ 7 [Strait Affid., stating that "[t]he [white] employee to which I believe Plaintiff is referring was employed prior to Plaintiff's termination."].)

For example, while Defendant has attempted to adduce admissible record evidence that it repeatedly gave Plaintiff oral warnings that his job performance was not satisfactory before it discharged him, that evidence (1) is not introduced by affiants who demonstrate personal knowledge of the facts in question (and/or whose testimony does not present certain hearsay issues), and (2) is not sufficiently specific in terms of how his job performance was not satisfactory.[15]

Moreover, while Defendant has adduced evidence that it currently maintains a "racially diverse" work environment, Defendant has failed to adduce admissible evidence of the specific racial breakdown of its employees during the time in question.[16]

Furthermore, while Defendant has adduced evidence that the white person who assumed Plaintiff's janitorial duties following Plaintiff's discharge was already an employee of Defendant at the time, Defendant has not adduced evidence of *when* that white person had previously been hired.  If the white person had been hired only immediately before Plaintiff was discharged, then

---

[15]   (*See, e.g.,* Dkt. No. 28, Attach. 2, ¶ 8-11 [Affid. of Elisa Bates, who does not appear to have been the property manager during the time in question]; Dkt. No. 28, Attach. 3, at 10 [attaching Ex. B to Affid. of *Elisa* Bates, containing correspondence dated May 16, 2008, to Plf. from *Adriana* Bates, which describes four things that Plaintiff must do better, but which does not indicate that it was received and read by Plaintiff]; Dkt. No. 31, Attach. 1, at ¶ 6 [Strait Affid., stating that Plaintiff was repeatedly given oral warnings that his job performance was not satisfactory before his termination, but not indicating his personal knowledge of that fact, but rather indicating that he was in Indiana at the time]; Dkt. No. 30, Attach. 3, at 2 [attaching Ex. C to Plf.'s Opp'n Memo. of Law, indicating that Thomas Strait was in Indiana at the time that Adriana Bates purportedly gave Plaintiff oral warnings].)

[16]   (Dkt. No. 28, Attach. 2, at ¶ 15 [Affid. of Elisa Bates, swearing that, "[s]ince its formation in 2006, [Defendant] has maintained a racially and ethnically diverse workplace," but not indicating the specific racial breakdown of its employees or how she has personal knowledge of that fact given that she was not apparently the property manager during the time in question]; Dkt. No. 31, Attach. 1, at ¶ 8 [Strait Affid., swearing that, as of June 2, 2011, Defendant "maintains a racially diverse work environment"]; *cf.* Dkt. No. 30, Attach. 3, at 3 [attaching Ex. C to Plf.'s Opp'n Memo. of Law, containing letter from Thomas Strait describing the racial breakdown of Defendant–and its "affiliate companies"–as of some point between August 25, 2008, and September 4, 2008].)

it is possible that a rational fact finder could conclude that, rather than rebut the inference of discrimination, the fact that the white person was already an employee was merely a pretext for the discrimination.

Finally, while Defendant has adduced evidence that the white employee who assumed Plaintiff's janitorial duties did so only temporarily until Plaintiff's position was ultimately filled by another African-American person, Defendant has not adduced evidence of *when* the African-American employee was hired.  If that employee was hired only *after* Plaintiff filed a complaint against Defendant with the New York State Division of Human Rights (on or around August 25, 2008), it is possible that a rational fact finder could conclude that, rather than rebut the inference of discrimination, the hiring of the African-American employee was merely a cover-up of the prior discrimination.

The Court notes that, should Defendant in a renewed motion adduce evidence that removes any genuine dispute of material fact that it hired an African-American person to replace Plaintiff before Plaintiff filed a charge of racial discrimination, the Court would likely reach a different conclusion regarding the merits of its motion.  *See Fleming v. Maxmara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) ("While a plaintiff may usually satisfy this element by showing that she was replaced by someone not in her protected class, . . . Fleming was replaced by another black female, Lisa Derrick. Fleming argues that Derrick was hired to disguise defendants' discriminatory act, but Fleming fails to point to any admissible evidence to support this assertion. Further, while Fleming points to cases concluding that where a plaintiff is replaced with a member of her protected class after the filing of a discrimination charge might suggest a cover-up, . . . here Derrick was hired at the same time that Fleming was fired, before Fleming took any legal action against defendants."); *Huntley v. Cmty. Sch. Bd. of Brooklyn*, 543 F.2d 979, 984 (2d Cir.1976) (finding it "significant that [the plaintiff] was replaced with another black"

17

employee).[17]

For all of these reasons, Plaintiff's claim under Title VII survives this aspect of Defendant's motion.  However, because the Court finds that the above-described defects in Defendant's motion papers may be rectified through better briefing (thus eliminating the need for a trial), the Court denies this aspect of Defendant's motion only without prejudice.

### 2.    Analysis Under Standard Governing Mixed-Motive Cases

Because the Court has already concluded that a genuine dispute of material fact exists under the standard governing pretext cases, the Court need not proceed to an analysis of whether a genuine dispute as of material fact exists under the standard governing mixed-motive cases. The Court would only note that, even if it were to proceed to such an analysis, the Court would find that such a genuine dispute of material fact exists for the substantially the same reasons as described above in Part III.C.1. of this Decision and Order.

---

[17]    *See also Cuttino v. Genisis Health Ventures, Inc.*, 04-CV-0575, 2006 WL 62833, at *6 (D. Conn. Jan. 11, 2006) ("The Court does not agree that, under the circumstances, the February 2002 letter would properly support an inference of racial discrimination. Ms. Cuttino admits that no explicit mention of race was ever made–either in the letter or otherwise–and she acknowledges that she was replaced by another African-American."); *Kahn v. Abercrombie & Fitch, Inc.*, 01-CV-6163, 2003 WL 22149527, at *8 (S.D.N.Y. Sept. 17, 2003) ("Khan cannot claim an inference of discrimination by alleging that she was replaced by a person outside of her protected class, as A & F replaced her with another African-American employee."); *Offutt v. Gannett Satellite Info. Network, Inc.*, 98-CV-0766, 1998 WL 872443, at *3 (S.D.N.Y. Dec.14, 1998) (finding no inference of race discrimination where the plaintiff, a black employee, "was replaced by another black man"); *Short v. Dillon, Read & Co. Inc.*, 2 F. Supp.2d 260, 263 (E.D.N.Y. 1997) "[T]he EEOC investigation established that Ms. Short was replaced by another Black woman. The Plaintiff therefore fails to satisfy the other factor that could possibly give rise to an inference of discriminatory termination . . . ."); *Scott v. Fed. Reserve Bank of New York*, 704 F. Supp. 441, 449 (S.D.N.Y. 1989) ("Scott has adduced no evidence to establish the fifth element because he was replaced by another Black male. . . .  No other evidence to support an inference of discrimination has been adduced. Thus, Scott cannot establish a prima facie case, and the New York Fed's motion for summary judgment must be granted.").

18

**D.      Whether Plaintiff's Cross-Motion for Summary Judgment on His Title VII Claim Should Be Granted**

As noted above in Part III.A. of this Memorandum-Decision and Order, Plaintiff's claim under 42 U.S.C. § 1983 is dismissed for failure to state a claim upon which relief can be granted. However, the question remains whether Plaintiff's motion for summary judgment on his Title VII claim should be granted.  After carefully considering the matter, the Court answers this question in the negative.

Of course, to prevail on a motion for summary judgment, the burden is on the movant to show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, as discussed above in Part III.C. of this Memorandum-Decision and Order, the record contains a genuine dispute of material fact with respect to Plaintiff's Title VII claim.  In particular, a genuine dispute of material fact exists regarding whether the reason proffered by Defendant for his termination (i.e., that he ceased performing his duties up to the specifications Defendant required) is merely a pretext for terminating him for his race (or whether his race was a motivating factor in the decision to discharge him).

For these reasons, Plaintiff's cross-motion for summary judgment on his claim under Title VII is denied.  However, because the Court finds that the above-described defects in Plaintiff's motion papers may be rectified through better briefing (thus eliminating the need for a trial), the Court denies this aspect of Plaintiff's motion only without prejudice.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 28) is **<u>GRANTED</u> in part and <u>DENIED</u> in part without prejudice**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 30) is

<u>**DENIED**</u> **without prejudice**; and it is further

**ORDERED** that Plaintiff's claim pursuant to 42 U.S.C. § 1983 is <u>**DISMISSED**</u> **with**

**prejudice;** and it is further

**ORDERED** that any renewed motion for summary judgment must be filed within thirty

(30) days from the date of this Decision and Order.

Dated: July 16, 2012
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge